UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
<u>SOUTHERN DISTRICT</u>

KATRINA MACKLEY, as next of friend
for E.M., a minor,

               Plaintiff,

v.                                Case No. 1:24-cv-00076
                                Honorable Robert J. Jonker

MASON PUBLIC SCHOOL DISTRICT;
LANCE DELBRIDGE; NICHOLAS TOODZIO;
BARB BYRUM and BRAD DELANEY, individually,

               Defendants.

---

| | |
|---|---|
| Brandon T. Wolfe  (P82421) | Mark T. Ostrowski  (P49761) |
| **WOLFE TRIAL LAWYERS, PLLC** | Jessica M. Stark-Flechsig  (P80647) |
| 2844 Livernois Rd., Suite 276 | Kyle J. Zielinski  (P83962) |
| Troy, Michigan 48099 | KLUCZYNSKI GIRTZ & VOGELZANG |
| Ph: (313) 450-2015 | Attorneys for Defendants Mason Public |
| brandon@hirethewolfe.com | District, Lance Delbridge, and Nicholas |
| | Toodzio |
| | Grand Rapids, MI  49546 |
| Uriel B. Abt  (P84350) | (616) 559-8649 |
| LAW OFFICE OF URI ABT PLLC | Email:  marko@kgvlaw.com |
| Attorney for Defendants Barb Byrum | Email:  jesstark@kgvlaw.com |
| and Brad Delaney | Email:  kzielinski@kgvlaw.com |
| 517 Wildwood Drive | |
| East Lansing, MI  48823 | Michael J. Nichols  (P59391) |
| (517) 858-9410 | Attorney for Def Byrum and Delaney |
| Email:  uri@abtlawfirm.com | 3452 E. Lake Lansing Road |
| | East Lansing, MI  48823 |
| | (517) 432-9000 |
| | Email:  mnichols@nicholslaw.net |

### <u>DEFENDANTS MASON PUBLIC SCHOOL DISTRICT, LANCE DELBRIDGE AND NICHOLAS TOODZIO'S BRIEF IN SUPPORT OF THEIR RULE 12(b)(6) MOTION TO DISMISS</u>

Date: March 6, 2024                    KLUCZYNSKI, GIRTZ & VOGELZANG
                                        Mark T. Ostrowski (P49761)
                                        Kyle J. Zielinski (P83962)
                                        Attorneys for Defendants Mason Public
                                        School District, Lance Delbridge and Nicholas
                                        Toodzio

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS…………………………………………………………………...ii

INDEX OF AUTHORITIES…………………………………………………………….…iii

I.      INTRODUCTION AND BRIEF STATEMENT OF FACTS…………………….......1

II.     ADDITIONAL STATEMENT OF FACTS……………………………………………2

III.    STANDARD OF REVIEW……………………………………………………………3

IV.    PLAINTIFF'S TITLE IX CLAIM SHOULD BE DISMISSED…………………………3

        A.     MPSD was not indifferent to the alleged incidents of sexual harassment………..5

        B.     Plaintiff has not pled subsequent harassment……………………….…………7

V.      PLAINTIFF'S ELCRA CLAIM SHOULD BE DISMISSED……………………………9

VI.    PLAINTIFF'S § 1985(3) AND STATE LAW CIVIL CONSPIRACY CLAIMS
        SHOULD BE DISMISSED………………………………………………………...10

VII.   PLAINTIFF'S STATE LAW CONSPIRACY CLAIM AGAINST MPSD IS
        BARRED BY ABSOLUTE IMMUNITY……………………………………………12

VIII.  DEFENDANTS DELBRIDGE AND TOODZIO ARE PROTECTED BY
        GOVERNMENTAL IMMUNITY FROM PLAINTIFF'S STATE LAW
        CONSPIRACY AND IIED CLAIMS……………………………………………...…14

IX.    PLAINTIFFS IIED CLAIMS SHOULD BE DISMISSED…………………………...18

CONCLUSION……………………………………………………………………………..19

## <u>INDEX OF AUTHORITIES</u>

**CASES**

16630 Southfield Ltd. P'ship v Flagstar Bank, F.S.B., 727 F.3d 502, 506 (6th Cir. 2013).. 3, 11

Ashcroft v Iqbal, 556 U.S. 662, 678-79 (2009)……………………………………… 3, 11

Bell Atlantic Corp. v Twombly, 550 U.S. 544, 556 (2007)………………………… 3, 11

Bischoff v Calhoun Co Prosecutor, 173 Mich App 802; 434 NW2d 249 (1988)…………..13

Center for Bio-Ethical Reform v Napolitano, 648 F.3d 365, 373 (6th Cir. 2011)………… 3, 11

Charest v. Citi Inv. Grp. Corp., No. 330775, 2017 WL 2212110, at *2
    (Mich. Ct. App. May 18, 2017)……………………………………………… 18

Cooper v Washtenaw Cnty, 270 Mich App 506, 509;715 NW2d 908 (2006)……………...16

Costa v Community Medical Services, 475 Mich 403, 410; 716 NW2d 236 (2006)………15

Courser v Allard, 969 F.3d 604, 622 (6th Cir. 2020) …………………………………………12

Dalley v Dykema Gossett, 287 Mich App 296, 321 (2010)……………………………… 18

Davis ex rel. LaShonda D. v Monroe County Board of Education,
    119 S. Ct. 1161, 526 U.S. 629, 643 (1999)………………………………………4, 5, 6

Doe v Baum, 227 F. Supp. 3d 784, 822–23 (E.D. Mich. 2017), rev'd and remanded,
    903 F.3d 575 (6th Cir. 2018)…………………………………………………………..9

Doe v Galster, 768 F.3d 611, 619 (7th Cir.2014)……………………………………………5

Doe v Mills, 212 Mich App. 73, 91 (1995)……………………………………………  19

Fieger v Cox, 524 F.3d 770, 776 (6th Cir. 2008)……………………………………………… 11

Fonseca v Michigan State Univ., 214 Mich App. 28, 30, 542 N.W.2d 273, 275 (1995)…. 9

Gordon v Traverse City Area Public Schools, 182 F.Supp.3d 715, 726
    (W.D. Mich. 2016)…………………………………………………………………9

Gracey v Wayne County Clerk, 213 Mich App 412, 420; 570 NW2d 710 (1995)…………13, 14

Griffin v Breckenridge, 403 U.S. 88, 102–03, 91 S. Ct. 1790, 1798–99,
    29 L. Ed. 2d 338 (1971)……………………………………………………………10

Gutierrez v Lynch, 826 F.2d 1534, 1539 (6th Cir.1987)………………………………… 10

Hunley v Phillips, 164 Mich App 517, 525; 417 NW2d 485 (1987)………………………13

Johnson v Wayne Co, 213 Mich App 143, 161-162 (1995)…………………………… 19

Kollaritsch v Michigan State Univ. Bd. of Trustees, 944 F.3d 613, 619 (6th Cir. 2019)…. 4, 7, 8

Mack v City of Detroit, 467 Mich 186, 198 (2002)……………………………………… 12, 13

Maiden v Rozwood, 461 Mich 109, 120-128 (1999)……………………………………… 12, 15

McGrew v Duncan, 333 F. Supp. 3d 730, 743 (E.D. Mich. 2018)……………………….  19

M.D. by & through Deweese v Bowling Green Indep. Sch. Dist., 709 F. App'x 775
    (6th Cir. 2017)……………………………………………………………………6, 7

Miller v Lord, 262 Mich App 640, 644 (2004)…………………………………………14

Mino v Clio Sch. Dist., 255 Mich App 60, 66, 79 (2003)……………………………… 19

Nawrocki v Macomb Co Rd Com'n, 463 Mich 143, 156 (2000)…………………………12

Odom v Wayne County, 482 Mich 459, 471–473; 760 NW2d 217…………………………17

Radu v. Herndon & Herndon Investigations, Inc., 302 Mich App 363, 386;
    838 NW2d 720 (2013)…………………………………………………………………17

Ray v Swager, 501 Mich 52, 65; 903 NW2d 366 (2017)……………………………………16

Robinson v City of Detroit, 462 Mich 439, 455 (2000)……………………………...12,13,16

Ross v Consumers Power Co., 420 Mich. 567; 363 NW2d 641 (1984)………………...…..16

Smith v Dep't of Public Health, 428 Mich 540……………………………………………13

Stiles ex rel. D.S. v. Grainger Cnty., Tenn., 819 F.3d 834 (6th Cir. 2016)…………………5
Stringwell v Ann Arbor Pub, Schs, 262 Mich App 709 (2004)……………………………12, 14
Tarlea v Crabtree, 263 Mich App 80 (2004)……………………………………………………16
Victor v Roscommon Cnty. Prob. Dep't, No. 11- 15143, 2012 WL 1598138, at *2
      (E.D. Mich. May 7, 2012)………………………………………………………………10
Vinson v Michigan Dep't of Corr., No. 14-11130, 2015 WL 9897844, at *15
      (E.D. Mich. Oct. 30, 2015)……………………………………………………………14
Walsh v Taylor, 263 Mich App 618, 624; 689 NW2d 506 (2004)…………………………15, 18
Wasek v Arrow Energy Servs., Inc., 682 F.3d 463, 468 (6th Cir. 2012)………………….. 9

**STATUTES**

42 U.S.C. § 1985(3)……………………………………………………………………  10
MCL § 37.2101……………………………………………………………………………  9
MCL § 37.2402(a)………………………………………………………………………  9
MCL § 37.2402(b)………………………………………………………………………  9
MCL § 380.1311(6)……………………………………………………………………...  2
MCL § 691.1407(1)……………………………………………………………………...  12
MCL § 691.1402………………………………………………………………………….  13
MCL § 691.1405………………………………………………………………………...  13
MCL § 691.1406………………………………………………………………………....  13
MCL § 691.1407(2)……………………………………………………………...13, 14, 15
MCL § 691.1407(3)……………………………………………………………………...  16
MCL § 691.1407(4)……………………………………………………………………...  13
MCL § 691.1413………………………………………………………………………….  13
MCL § 691.1416……………………………………………………………………….....  13

**COURT RULES**

Fed R. Civ. P. 12(b)(6)…………………………………………………………………… 3
Fed R. Civ. P. 8(a)(2)……………………………………………………………………… 3

## I.       INTRODUCTION AND BRIEF STATEMENT OF FACTS.

This lawsuit concerns the Mason Public School District's ("the District") decision to allow B.D., now a 10th-grader, to attend high school under certain conditions a year after he was found to have violated school policy which resulted in his expulsion from middle school. B.D. was expelled due to alleged sexual assault of another student, E.M. The sexual assaults of E.M. are alleged to have occurred in two separate instances in May of 2022. E.M. did not report either alleged sexual assault to anyone until a few days after the second incident is alleged to have occurred.

Defendant Lance Delbridge is the Principal and Defendant Nicholas Toodzio is the Assistant Principal at Mason Public High School. Defendants Barb Byrum and Brad Delaney are B.D.'s parents. Defendants Byrum and Delaney petitioned the Mason Public Schools Board of Education for their son's reinstatement in accordance with the required procedure set forth under Michigan law.  The Board of Education granted B.D. a conditional reinstatement which allowed him to return to Mason Public High School. For this, Plaintiff seeks to hold the Mason Public School District liable for violation of Title IX, 20 U.S.C. § 1681(a), the Michigan Elliot Larsen Civil Rights Act (ELCRA) and alleged participation in a conspiracy to deny E.M. of her civil rights under 42 U.S.C. § 1985(3) and Michigan law.

 Plaintiff also seeks to hold Defendants Delbridge and Toodzio liable for violation of ELCRA, for their alleged participation in a conspiracy to deny E.M. of her civil rights under Michigan law, and for Intentional Infliction of Emotional Distress under Michigan law. Plaintiff's claims are both defective and frivolous and should be dismissed with prejudice.

## II.      ADDITIONAL STATEMENT OF FACTS.

During the summer of 2022, B.D. was found to have violated school policy and was expelled from Mason Middle School for alleged sexual assault of fellow middle school student E.M.. (Exhibit A, Plaintiff's First Amended Complaint at pp. 5-6) After B.D. followed the terms of the expulsion for one year, B.D.'s parents, Defendants Byrum and Delaney, filed a petition with the Mason Public Schools Board of Education seeking B.D.'s reinstatement. (*Id.* at 6) Michigan law explicitly allows parents of expelled minors to petition the relevant school board for reinstatement. *See*, e.g. MCL § 380.1311(6). The Mason Public School Board of Education granted the petition subject to the condition that B.D. abide by a no-contact order. (*Id.* at 6-7) B.D. was allowed to attend Mason High School beginning in the fall of 2023. (*Id.* at 6)

The no contact order applied to direct and indirect contact at school, on school grounds or at school sponsored events. The order prohibited the two students from having direct contact, indirect contact and ensured that the two would not be scheduled in the same classroom or have their lockers placed near each other's. (*Id.* at 5.)

Plaintiff does not allege that Defendants Delbridge and Toodzio did anything aside from participating in the process which allowed B.D. to be reinstated and failed to take further steps to protect E.M. upon B.D.'s reinstatement. (*Id.* at 13-14, 21-22) Plaintiff alleges that Defendant Byrum is the Ingham County Clerk and Defendant Delaney is employed by the Ingham County Sheriff's Office and "used their political influence," (*Id.* at 16) and that "upon information and belief Defendants Mason Public Schools and the Mason Board of Education violated Plaintiff's civil rights pursuant to an agreement with or in concert with" Defendants. (*Id.* at 15) Plaintiff does not allege any facts supporting these conclusory and false allegations.

Plaintiff does not allege that B.D. has attempted to sexually assault or otherwise harass E.M. upon his return to the District. Instead, Plaintiff simply alleges that E.M. is forced to continue to see B.D. nearly every day while at school in the halls, lunchrooms and at extracurricular activities. (*Id.* at 8).

## III.  STANDARD OF REVIEW.

To survive a motion to dismiss, Plaintiff must assert sufficient factual allegations to establish that her claims are "plausible on [their] face." *Bell Atlantic Corp. v Twombly*, 550 U.S. 544, 556 (2007). Following the two-step process set forth in *Ashcroft v Iqbal*, 556 U.S. 662, 678-79 (2009), courts first disregard "mere recitals of the elements of a cause of action, supported by mere conclusory statements." Allegations based upon "information and belief" are "precisely the kinds of conclusory allegations that Iqbal and Twombly condemned and thus told [courts] to ignore when evaluating a complaint's sufficiency." *16630 Southfield Ltd. P'ship v Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013). Second, courts review any remaining allegations to determine whether they "plausibly" entitle the plaintiff to relief. *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 567). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). As interpreted by the Sixth Circuit, a complaint that does not provide the "when, where, in what or by whom" to support conclusory allegations fails to state a claim. *Center for Bio-Ethical Reform v Napolitano*, 648 F.3d 365, 373 (6th Cir. 2011).

## IV.  PLAINTIFF'S TITLE IX CLAIM SHOULD BE DISMISSED.

Plaintiff has not alleged a valid claim under Title IX. Peer-on-peer sexual harassment supports a Title IX claim against a federal funding recipient like the District in only certain limited circumstances. To hold a public school district liable for such harassment, a student must establish

(1) sexual harassment so severe and offensive that it deprives them of access to the schools educational opportunities, (2) the schools actual knowledge of the harassment, and (3) the schools "deliberate indifference" to the harassment. *Davis ex rel. LaShonda D. v Monroe County Board of Education*, 119 S. Ct. 1161, 526 U.S. 629, 643 (1999)

  The *Davis* formula can be broken down into two separate components, comprising separate-but-related torts by separate-and-*un*related tortfeasors: (1) "actionable harassment" by a student, and (2) a deliberate-indifference intentional tort by the school. *Kollaritsch v Michigan State Univ. Bd. of Trustees*, 944 F.3d 613, 619 (6th Cir. 2019). The critical point is that the *Davis* formulation requires that the school had actual knowledge of some actionable sexual harassment and that the school's deliberate indifference to it **resulted in further actionable harassment of the student-victim.** *Id.* Therefore, even if a plaintiff can establish actionable student-on-student harassment, their claim fails if the school was clearly not deliberately indifferent to the actionable harassment, or the plaintiff has not faced any further actionable harassment.

  Plaintiffs Title IX claim is premised on the allegation that by allowing B.D. to return to school where E.M. could potentially encounter him, the District has become deliberately indifferent to the harassment E.M. faced. Plaintiff does not allege there has been any additional harassment towards E.M. following the District gaining knowledge of the alleged sexual assaults in May of 2022. As Plaintiff has not alleged any harassment occurred after the school became aware of the initial sexual harassment of E.M., her claims fail as a matter of law.

  It is also clear, as detailed in the complaint, the District was also not indifferent to the allegations against B.D. as once the District became aware of them, he was expelled. The Plaintiff does not get to dictate, and the law does not require the District to take any "particular disciplinary action, completely remedy peer harassment or purge itself of offending students." *Davis* at 648,

119 S.Ct. 1661. Instead, the District must merely respond to the known peer harassment in a manner that is not clearly unreasonable. *Id.*

### A.      MPSD was not indifferent to the alleged incidents of sexual harassment.

The deliberate indifference standard set forth in Davis sets a high bar for plaintiffs to recover under Title IX by design. *Doe v Galster,* 768 F.3d 611, 619 (7th Cir.2014). It requires only that school administrators respond to known peer harassment in a manner that is not "clearly unreasonable in light of the known circumstances." *Davis,* 526 U.S. at 648, 119 S.Ct. 1661. This standard is not a "mere 'reasonableness' standard," and "there is no reason why courts ... [can]not identify a response as not 'clearly unreasonable' as a matter of law." *Id.* at 649.

The District was not indifferent to the sexual harassment allegedly faced by E.M. in 2022 based on their reasonable response in light of the circumstances known to them. Once the Plaintiff reported the harassment to the Assistant Principal at the middle school, the District immediately took action. They expelled B.D. upon the completion of the Title IX investigation, and because of their actions, there has been no further actionable sexual harassment of E.M. Expulsion was the harshest punishment available for the school to levy against B.D. Upon the return of B.D. the District took all possible steps to ensure that E.M. would not face further sexual harassment from B.D. by implementing the no contact order in addition to the PPO.

Moreover, the District's handling of E.M.'s harassment compares favorably to cases where courts have found a school's response was not clearly unreasonable.  For example, the plaintiff in *Stiles ex rel. D.S. v Grainger Cnty., Tenn.,* 819 F.3d 834 (6th Cir. 2016) suffered recurring verbal and physical harassment for over a year and a half, including having his head rammed into a wall and being repeatedly called "faggot" and "queer."  The school's response ranged from doing nothing to suspending the offending students, depending on the "perceived seriousness of each

incident," *Id.* at 851. The court held that the plaintiff fell short of showing deliberate indifference because the "school's disciplinary and remedial responses were reasonably tailored to the findings of each investigation." *Id.*

Similarly, In *M.D. by & through Deweese v Bowling Green Indep. Sch. Dist.,* 709 F. App'x 775 (6th Cir. 2017) the plaintiff was a high school student and cheerleader who was sexually assaulted by a male teammate while on the bus back from a cheerleading championship event. Once the sexual assault was reported, the district took immediate action and after they had confirmed the allegation as true, suspended the offending student and transferred him to an alternative school. The attacker had no further disciplinary incidents while at the alternative school, and on his third attempt was allowed to return to the High School with M.D. with a warning that even one interaction with M.D. would result in him being placed back at the alternative school. *Id.* at 776. The Plaintiff filed suit alleging violation of Title IX due to her various encounters with her assaulter after he returned. While the court understood the plaintiff's desire to not see her assaulter at school, they found the school was not deliberately indifferent to her assault, even when they allowed the perpetrator of the assault to return. *Id.* at 777. The district was not deliberately indifferent to the sexual harassment of M.D. because they had obtained a confession, suspended the attacker and only allowed his return upon a showing of good behavior and strict conditions moving forward. Under the circumstances, that response was not clearly unreasonable as it had in fact been working as intended, as M.D. admitted that she and the attacker had no further interaction after the incident. *Id.*

Similarly, in this case, while it is clear the Plaintiff would prefer that B.D. was permanently expelled with any request for his reinstatement denied, Courts should refrain from second guessing the disciplinary decisions made by school administrators. *Davis*, 526 U.S. at 648, 119 S.Ct. 1661.

The District must merely respond to the known peer harassment in a manner that is not clearly unreasonable. *Id.*

   **B.      Plaintiff has not pled subsequent actionable harassment.**

   The Plaintiff has not alleged any further actionable harassment after the initial complaint made regarding the May of 2022 incidents. Courts have routinely held that the mere presence of an individual who previously harassed a student is not actional harassment absent other conduct which could be described as aggressive, severe, and objectively offensive. (*See Kollaritsch v Michigan State Univ. Bd. of Trustees*, 944 F.3d 613 (6th Cir. 2019) and *M.D. by & through Deweese v Bowling Green Indep. Sch. Dist.,* 709 F. App'x 775 (6th Cir. 2017)).

   In *Kollaritsch* four female students brought suit against Michigan State University following their sexual assault by male students. The female students alleged the administration's response was inadequate, caused them physical and emotional harm, and consequently denied them educational opportunities. The district court dismissed the claims related to one of the students, leaving claims from three female students where they claimed MSU had violated their rights under Title IX due to the school's alleged deliberate indifference to their assaults. The Six Circuit granted a motion seeking an interlocutory appeal finding that "whether a plaintiff must plead further acts of discrimination to allege deliberate indifference to peer-on-peer harassment under Title IX is a controlling question of law warranting immediate appeal." *Id.* at 619.

   Two of the female students in Kollaritsch alleged strikingly similar facts as to the Plaintiff in this case. The first student, Emily Kollaritsch, reported her sexual assault to MSU, which triggered an investigation. Following the investigation the perpetrator was placed on probation and any further contact with Ms. Kollaritsch was forbidden. However, Ms. Kollaritsch reported that her and the perpetrator had contact during his probation at least nine times. In describing the encounters, she suggested they were merely their mutual presence at the same location. The court

held as a matter of law that the encounters did not amount to further actionable sexual harassment because they were not sexual, severe, pervasive or objectively unreasonable and therefore, she had not plead and could not show causation necessary to state a viable deliberate indifference claim under Title IX. *Id* at 624-625.

The second similar student, Shayna Gross, also reported a male student had sexually assaulted her. The university completed an investigation, finding the sexual assault did occur as reported, and disciplined the offending student by expelling him from the university. The offending student appealed the findings and was eventually reinstated by MSU following his second appeal. Following his reinstatement, the offending student and Ms. Gross had no reported contact and there was no evidence of further harassment. Ms. Gross instead argued she could have encountered him at any time due to his mere presence on campus. The Court found Ms. Gross failed to plead any actionable sexual harassment following her initial report had no viable claim under Title IX. *Id* at 625-626.

So it is in the present case.  Plaintiff has failed to plead any facts showing actionable sexual harassment following her initial complaint.  The only allegations related to B.D.'s conduct after his reinstatement relate to his being present at the school. There are no allegations he has been antagonistic, made any direct statements or actions towards the Plaintiff, or has otherwise done anything of note directed toward E.M. Plaintiff alleges nothing more than B.D. trying to co-exist with E.M. upon his return.

Plaintiff's claims against the school district defendants should be dismissed with prejudice. No facts are alleged showing: (1) the district was deliberately indifferent to the sexual assault of E.M., or (2) there has been further actionable harassment.

## V.      PLAINTIFF'S ELCRA CLAIMS SHOULD BE DISMISSED.

Plaintiff has also alleged a claim under Michigan's Elliott–Larsen Civil Rights Act (ELCRA), MCL § 37.2101 *et seq.* against Defendants MPSD, Delbridge and Toodzio.   The ELCRA prohibits discrimination impacting an individual's use of educational institutions on the basis of sex. MCL § 37.2402(a). Under that law, an educational institution may not "[e]xclude, expel, limit, or otherwise discriminate against an individual seeking admission as a student or an individual enrolled as a student in the terms, conditions, or privileges of the institution, because of ... sex." MCL § 37.2402(b).

Because the educational provisions of the act have received little judicial interpretation and because the statutory language employs terms of art used and judicially interpreted extensively in the specialized but extensive field of employment discrimination, [the Court may look to those] decisions to interpret and apply the law to the facts." *Fonseca v Michigan State Univ.*, 214 Mich App 28, 30, 542 N.W.2d 273, 275 (1995). Also, "when Title VII and ELCRA have similarly worded provisions, Michigan courts often interpret ELCRA provisions using Title VII case law." *Wasek v Arrow Energy Servs., Inc.*, 682 F.3d 463, 468 (6th Cir. 2012).

Where a plaintiff has failed to put forth any plausible allegation that a policy or decision in question caused him to be treated differently because of his sex or gender, there is no need for the Court further to address any alleged specific infirmity in the challenged policy or decision. *See Gordon v Traverse City Area Public Schools*, 182 F.Supp.3d 715, 726 (W.D. Mich. 2016) ("The Court need not analyze any of these elements because Plaintiff's claim fails for the basic reason that Plaintiff does not allege that he was harassed because of his sex.").*Doe v Baum*, 227 F. Supp. 3d 784, 822–23 (E.D. Mich. 2017), rev'd and remanded, 903 F.3d 575 (6th Cir. 2018)

Plaintiff has not alleged any facts that could plausibly sustain a claim she was denied any privileges in the course of the sexual misconduct investigation on the basis of her sex or gender. Conclusory allegations are not sufficient. There are no facts alleged showing evidence the gender of E.M. or B.D. played any role in the decisions made by the District or its employees and the Plaintiff provides no explanation for her claim that gender was involved.  She has not alleged a male student in her shoes would have been treated differently, or that B.D. would have been punished more harshly had he been a female.  No plausible basis has been alleged to sustain a "gender discrimination" claim under ELCRA.

## VI.    PLAINTIFFS' § 1985(3) AND STATE LAW CIVIL CONSPIRACY CLAIMS SHOULD BE DISMISSED.

Plaintiff claims that Defendant Mason Public School District is liable for civil conspiracy under 42 U.S.C. § 1985(3) also fails. No facts have been alleged showing the school district conspired with another actor under § 1985(3). To come within the legislation a complaint must allege that: 1) defendants conspired or went in disguise on the highway or on the premises of another; 2) for the purpose of depriving, either directly  or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; 3) that one or more of the conspirators committed an act in furtherance of the object of the conspiracy; 4) whereby another was injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States. *Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S. Ct. 1790, 1798–99, 29 L. Ed. 2d 338 (1971).

 The bar is a high one at the pleading stage. "Conspiracy claims must be pled with some specificity . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Victor v Roscommon Cnty. Prob. Dep't*, No. 11- 15143, 2012 WL 1598138, at *2 (E.D. Mich. May 7, 2012) (citing *Gutierrez v Lynch*, 826 F.2d 1534, 1539 (6th

Cir.1987)). In other words, "pleading requirements governing civil conspiracies are relatively strict." *Fieger v Cox,* 524 F.3d 770, 776 (6th Cir. 2008) (affirming sanctions where plaintiff brought conspiracy claim based on vague and conclusory allegations).

Here, Plaintiff pleads no facts at all in support of her conspiracy claim. Plaintiff's allegations that Defendant MPSD acted in "agreement with or in concert with Defendant Barb Bryum and Delany", "were acting under their unique positions of power when they conspired with the Defendants Barb Bryum and Delaney", or that they "conspired and/or agreed while acting in their unique positions of power to allow B.D. back into Mason High School" are devoid of any factual content. (Exhibit A, at 15, 23). They are precisely the sort of conclusory statements that the Supreme Court and the Sixth Circuit have held must be ignored when evaluating a complaint. *16630 Southfield Ltd. P'ship,* 727 F.3d at 506 (allegations based upon "information and belief" are "precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told [courts] to ignore when evaluating a complaint's sufficiency."); *Center for Bio-Ethical Reform*, 648 F.3d at 373 (a complaint that does not provide the "when, where, in what or by whom" to support conclusory allegations fails to state a claim.)

The necessity of pleading conspiracy with specificity is particularly acute where, as here, the entire claim is premised on the various Defendants availing themselves of a legally prescribed adjudicative process. Plaintiff has not plead facts that could plausibly establish any of the Defendants engaged in a conspiracy simply by participating in a legally proscribed process resulting in B.D.'s reinstatement.

To the extent Plaintiff is attempting to plead conspiracy under Michigan law, the claim fails for the same reasons. To establish conspiracy under Michigan law, Plaintiff must plead "a combination of two or more persons, by some concerted action, to accomplish a criminal or

unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Courser v Allard*, 969 F.3d 604, 622 (6th Cir. 2020). Just as with § 1985(3) claims, conspiracy claims under Michigan law must be pled with specificity. *Id.*

Once the conclusory allegations are stripped away, it is clear Plaintiff has not alleged any facts suggesting that Defendant MPSD engaged in "concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." Thus, Plaintiff's state law conspiracy claims should be dismissed as well.

## VII.   PLAINTIFF'S STATE LAW CONSPIRACY CLAIM AGAINST MPSD IS BARRED BY ABSOLUTE IMMUNITY.

The operation of a public school system is a governmental function and a school district, and its employees are immune from tort liability, unless an exception to governmental immunity applies.  *See, Stringwell v Ann Arbor Pub, Schs*, 262 Mich App 709 (2004).  The Michigan Governmental Tort Liability Act ("GTLA"), at MCL § 691.1407(1) provides:

> Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function . . . .

The immunity from tort liability provided by MCL § 691.1407(1) is expressed in the broadest possible language, extends to all governmental agencies, and applies to all tort liability when the governmental agencies are engaged in the exercise or discharge of a governmental function. *Nawrocki v Macomb Co Rd Com'n*, 463 Mich 143, 156 (2000). The scope of governmental immunity is broad and any exceptions are to be **narrowly construed**. *Robinson v City of Detroit*, 462 Mich 439, 455 (2000).

Plaintiff bears the burden of alleging and proving facts demonstrating application of an exception to governmental immunity. *Mack v City of Detroit*, 467 Mich 186, 198 (2002). In response to a motion for summary disposition, plaintiffs have the burden of producing admissible

evidence to create a genuine issue of material fact regarding whether the exception applies. *See Maiden v Rozwood*, 461 Mich 109, 120-128 (1999); *Smith v Dep't of Public Health*, 428 Mich 540, 591 (1987) In other words, governmental immunity is not an affirmative defense, but rather is a characteristic of government that plaintiffs must overcome to state a valid claim. *Mack*, *supra*, 467 Mich at 201-202.

There are no exceptions to governmental immunity that apply to this case. There are only six statutory exceptions: (1) failure to maintain highways, MCL § 691.1402; (2) negligent operation of a government-owned vehicle, MCL § 691.1405; (3) ownership or operation of a governmental hospital, MCL § 691.1407(4); (4) performance of a proprietary function, MCL 691.1413; (5) negligent failure to maintain or repair a public building. MCL § 691.1406, and; (6) sewage disposal system event MCL § 691.1416, et seq. *See*, *also*, *Robinson v City of Detroit*, 462 Mich 439, 453-455, and n. 12 (2000).

The gross negligence exception set forth at MCL § 691.1407(2) applies only to claims against individuals. It does not provide a basis for holding a governmental agency liable. *See, Gracey v Wayne County Clerk*, 213 Mich App 412, 420; 570 NW2d 710 (1995), *overruled on other grounds,* 454 Mich 135, 142; 560 NW2d 50 (1997). Nor is there any intentional tort exception to governmental immunity. *See, Bischoff v Calhoun Co Prosecutor*, 173 Mich App 802; 434 NW2d 249 (1988).

Principals of vicarious liability do not apply absent application of a statutory exception to immunity. As the Court stated in *Hunley v Phillips*, 164 Mich App 517, 525; 417 NW2d 485 (1987):

Vicarious tort liability can only be imposed upon a governmental agency where:

(1) the employee or agent committed a tort while acting during the course of employment and within the scope of his authority, **and**

(2) the employee or agent committed a tort while engaged in an activity which was nongovernmental or proprietary or which fell within an exception to the governmental immunity act.

*See also, Gracey, supra,* at 421(no vicarious liability unless tort falls within exception to governmental immunity).

Michigan Courts have held state law conspiracy claims are an intentional tort. See *Vinson v Michigan Dep't of Corr.,* No. 14-11130, 2015 WL 9897844, at *15 (E.D. Mich. Oct. 30, 2015). As such the claims are barred by governmental immunity.  There is no exception which encompasses the reinstatement of a student through a process prescribed by state law.

## VIII.   DEFENDANTS DELLBRIDGE AND TOODZIO ARE PROTECTED BY GOVERNMETNAL IMMUNITY FROM PLAINTIFF'S STATE LAW CONSPIRACY AND IIED CLAIMS.

Defendants Delbridge and Toodzio are also protected by qualified immunity as they were not grossly negligent, and their actions were not **"the"** proximate cause of E.M's injuries.  Under the Governmental Tort Liability Act ("GTLA"), governmental employees and volunteers are immune from suit "if they were acting within the scope of their authority, were 'engaged in the exercise or discharge of a governmental function,' and their conduct did not 'amount to gross negligence that is the proximate cause of the injury or damage.'" *Miller v Lord*, 262 Mich App 640, 644 (2004) (quoting MCL § 691.1407(2)(b) and (c)).

As discussed above, the operation of a public school system is a governmental function and just as a school district is immune from tort liability, so are its employees and volunteers, unless an exception to governmental immunity applies.  *See, Stringwell v Ann Arbor Pub, Schs*, 262 Mich App 709; 686 N.W.2d 825 (2004).  Accordingly, when no reasonable person could find that a governmental employee's conduct was grossly negligent, policy favors a court's timely grant of summary disposition to afford that employee the fullest protection of the GTLA's immunity

provision by sparing the employee the expense of an unnecessary trial.  **"It is important to note that the purpose of governmental immunity is to protect the governmental body, not only from liability but from trial itself"**.  *Walsh v Taylor*, 263 Mich App 618, 624; 689 NW2d 506 (2004).  As the Michigan Supreme Court stated in *Costa v Community Medical Services*, 475 Mich 403, 410; 716 NW2d 236 (2006), "We have also observed that a central purpose of governmental immunity is to prevent a drain on the state's financial resources, by avoiding even the expense of having to contest on the merits any claim barred by governmental immunity."

Plaintiff has failed to make any allegations showing that Defendants Delbridge and Toodzio were not acting within the course of their duties by reinstating B.D.   There are no allegations disputing principals or assistant principals have the authority to reinstate previously expelled students who apply for reinstatement through the process outlined under state law. Any potential argument that Defendants Delbridge and Toodzio was acting outside of the course of their authority would run contrary to established Michigan law applying governmental immunity broadly.

There are no facts alleged showing gross negligence in the present case.  Gross negligence is defined by statute as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."  MCL § 691.1407(2).  *See also*, *Maiden v Rozwood,* 461 Mich 109, 122 (1999).  Reckless conduct is substantially more egregious than negligent conduct.  *Id.* at 122. [1]

---

[1] In *Maiden*, *supra*, at 121-122, the Michigan Supreme Court held that allegations of simple negligence against a government employee did not establish a gross negligence claim.  The Court reasoned that "a plaintiff must adduce proof of conduct 'so reckless as to demonstrate a substantial lack of concern for whether any injury results.' To hold otherwise would create a jury question premised on something less than the statutory standard." *Id.* at 122. *Maiden* involved the death of a mental institution patient.  Maiden caused a disturbance on the day of his death after physically and verbally assaulting another patient.  Three defendant employees attempted to calm Maiden without success.  After striking one of the employees, Maiden was restrained.  The manner of restraint caused Maiden's death. *Id.* at 113-116.  The Court held that the use of an unapproved method of restraint was not evidence of gross negligence. The Court ultimately concluded that even though other methods of restraint were available, no reasonable juror could find the failure to employ those alternatives was so reckless "as to demonstrate a substantial lack of concern for whether an injury results" and affirmed the grant of summary disposition to defendants.  *Id.* at 127.

As the Court stated in *Tarlea v Crabtree*, 263 Mich App 80 (2004), "**The much less demanding standard of care – gross negligence – suggests, instead, almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks.** It is as though, if an objective observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge." *Id.* at 90.

In the present case, there are no allegations showing gross negligence or any disregard for substantial risk. Defendants Delbridge and Toodzio conditioned B.D.'s return on compliance with a no contact directive and there has been no subsequent harassment. No reasonable, objective, observer could conclude either individual simply did not care about the safety or welfare of E.M.

In addition to establishing gross negligence on the part of Defendants Delbridge and Toodzio, Plaintiff must show their actions were **"the"** proximate cause of E.M.'s injuries or loss (i.e. the one most direct and efficient cause).  It is not sufficient for him to show that Defendants Delbridge and Toodzio's conduct was **"a"** proximate cause of her injuries. "The phrase **'the proximate cause'** is defined and limited to the **one most immediate, efficient, and direct cause preceding an injury**." *See, Ray v Swager*, 501 Mich 52, 65; 903 NW2d 366 (2017) and *Robinson v City of Detroit,* 462 Mich 439, 459; 613 NW2d 307 (2000).  The Supreme Court specifically limited the scope of **"the"** proximate cause noting the statute **"contemplates *one* cause."** *Robinson, supra*, at 462 (emphasis added); *see also*, *Cooper v Washtenaw Cnty*, 270 Mich App 506, 509;715 NW2d 908 (2006).

Defendants Delbridge and Toodzio were not **the** proximate cause of Plaintiff's injuries. B.D. bears sole responsibility for any alleged harm.

Pursuant to MCL § 691.1407(3), government officials are also immune from liability for intentional torts, provided they satisfy the test set forth in *Ross v Consumers Power Co.,* 420 Mich.

567; 363 NW2d 641 (1984). *Odom v Wayne County,* 482 Mich 459, 471–473; 760 NW2d 217.

Pursuant to the *Ross* test, an individual is entitled to individual governmental immunity from an

intentional tort, by showing: (a) The acts were undertaken during the course of employment and

the employee was acting, or reasonably believed that he was acting, within the scope of his

authority, (b) the acts were undertaken in good faith, or were not undertaken with malice, and (c)

the acts were discretionary, as opposed to ministerial. *Id.* at 480.

A governmental employee does not act in 'good faith' if the employee acts 'maliciously or

with a wanton or reckless disregard of the rights of another.' *Radu v Herndon & Herndon*

*Investigations, Inc.,* 302 Mich App 363, 386; 838 NW2d 720 (2013), quoting *Odom,* 482 Mich at

474, 760 NW2d 217. To establish willful and wanton misconduct there must be an intent to harm

or "such indifference to whether harm will result as to be the equivalent of a willingness that it

does." *Odom,* 482 Mich 459, 475; 760 NW2d 217. Discretionary acts have been defined as those

which "require personal deliberation, decision and judgment." *Id.* at 476. In contrast, "ministerial"

acts are those which "constitute merely an obedience to orders or the performance of a duty in

which the individual has little or no choice." *Id.*

Here, Defendants Delbridge and Toodzio were clearly working in the course of their

employment and within their authority as school administrators. The acts they undertook were

done in good faith, without malice, and were discretionary. Defendants Delbridge and Toodzio

used their own judgement in deciding to approve the reinstatement of B.D. and reinstating B.D.

was not done with any malice towards E.M. Defendants Delbridge and Toodzio were simply

following a procedure outlined by Michigan Law.

17

IX.     **PLAINTIFFS IIED CLAIMS SHOULD BE DISMISSED.**

Plaintiff's claim of intentional infliction of emotional distress (IIED) is also baseless. In order to state a claim of IIED Plaintiff must plead facts plausibly establishing: (1) the defendant's extreme and outrageous conduct, (2) the defendant's intent or recklessness, (3) causation, and (4) the severe emotional distress of the plaintiff. *Walsh v Taylor*, 263 Mich. App. 618, 634 (2004). "Liability attaches only when a plaintiff can demonstrate that the defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Id. (quotations omitted). The "extreme and outrageous" standard is an objective one and the Court must decide, in the first instance, whether the allegations meet that threshold. *Dalley v Dykema Gossett*, 287 Mich App 296, 321 (2010).

Here, Plaintiff's IIED claim fails for several reasons. First, Plaintiff fails to allege the element of intent, Plaintiff must allege facts showing that Defendants "specifically intended to cause E.M. emotional distress or that their conduct was so reckless that any reasonable person would know emotion distress would result." *Charest v Citi Inv. Grp. Corp.*, No. 330775, 2017 WL 2212110, at \*2 (Mich. Ct. App. May 18, 2017). Again, all Defendants are alleged to have done is participate in the process of evaluating a petition for reinstatement. There are no facts alleged to show Defendants Delbridge and Toodzio intended any harm.

Second, the conduct forming the basis of Plaintiff's claim— allowing B.D. to return to school after one year subject to a no-contact order—does not constitute "extreme and outrageous" conduct under Michigan law. Plaintiff does not allegethat B.D. has had any contact with E.M. beyond seeing him at a distance. Merely allowing B.D.'s conditional return to high school does not constitute the type of conduct that is required to establish IIED under Michigan law. See, e.g.,

*McGrew v Duncan,* 333 F. Supp. 3d 730, 743 (E.D. Mich. 2018) (officer who threw plaintiff to ground, ridiculed her appearance, and threatened to shoot her did not engage in "extreme and outrageous" for purposes of IIED); *Mino v Clio Sch. Dist.,* 255 Mich App 60, 66, 79 (2003) (spreading rumors of sexual misconduct to protentional employers is not "extreme and outrageous" for purpose of IIED). Cf. *Johnson v Wayne Co*, 213 Mich App 143, 161-162 (1995) (juror in murder trial held in contempt of court and placed in holding cell with the alleged murderer constitutes IIED); *Doe v Mills*, 212 Mich. App. 73, 91 (1995) (publicizing plaintiffs' names and the fact of their abortions on large signs held up outside clinic entrance constitutes IIED).

## CONCLUSION

For the foregoing reasons, Defendants Mason Public School District, Lance Delbridge and Nicholas Toodzio, respectfully request that all counts against them be dismissed with prejudice.

KLUCZYNSKI, GIRTZ & VOGELZANG

Date:  March 6, 2024

/s/ Mark T. Ostrowski_____
Mark T. Ostrowski  (P49761)
Kyle J. Zielinski (P83962)
Attorneys for Defendants
3033 Orchard Vista Dr SE, Suite 308
Grand Rapids, MI  49546
(616) 559-864

## <u>CERTIFICATE OF COMPLIANCE</u>

As required under LCivR 7.2(b)(i), I hereby certify that this brief includes 6,188 words including headings, footnotes, citations, and quotations and not including the case caption, cover sheets, any table of contents, any index of authorities, the signature block, attachments, exhibits, and affidavits. This word count was generated by Microsoft Word Version 2401, the processing software utilized to draft this brief.

KLUCZYNSKI, GIRTZ & VOGELZANG

Date:  March 6, 2024                  /s/ Mark T. Ostrowski_____
                                      Mark T. Ostrowski  (P49761)
                                      Kyle J. Zielinski (P83962)
                                      Attorneys for Defendants
                                      3033 Orchard Vista Dr SE, Suite 308
                                      Grand Rapids, MI  49546
                                      (616) 559-864