UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATRINA MACKLEY, as next friend for
E.M., a minor,

    Plaintiff

v.

MASON PUBLIC SCHOOL DISTRICT,
et al.,

    Defendants.
_____/

Case No. 1:24-cv-76

Hon. Robert J. Jonker

## ORDER

### INTRODUCTION

On January 27, 2024, Plaintiff Katrina Mackley filed this action as next friend of her minor daughter (E.M.).[1] (ECF No. 1). E.M.'s Amended Complaint alleges that her male classmate (B.D.) sexually assaulted E.M. twice in May 2022 during eighth-grade English class. (ECF No. 9). Defendant Mason Public School District initially expelled B.D.—a "Schools of Choice" student who resides outside of the District—but it allowed him to return at the start of his tenth-grade year after his parents (Defendants Barb Byrum and Brad Delaney) allegedly used their local political heft to successfully petition for his reinstatement. (*Id.*). Mason High School administrators (Defendants Lance Delbridge and Nicholas Toodzio) instituted a no-contact order between B.D. and E.M., but E.M. contends that B.D. has repeatedly violated that order. (*Id.*).

The matter is before the Court on the District's and B.D.'s parents' respective motions to dismiss under FED. R. CIV. P. 12(b)(6). (ECF Nos. 10, 12). The Court previously declined

---

[1] For readability, the Court will refer to Plaintiff as "E.M."

supplemental jurisdiction over E.M.'s State law claims and dismissed those claims without prejudice.[2,3] The remaining claims are E.M.'s Title IX gender discrimination claim against the District (Count 1), *see* 20 U.S.C. § 1681(a), and her claim against all Defendants that B.D.'s parents improperly leveraged their political power and conspired with the District Defendants to reinstate B.D. (Count 6), *see* 42 U.S.C. § 1985(3). The Court **GRANTS B.D.'s parents' Motion** and **GRANTS IN PART and DENIES IN PART the District's Motion.**

## BACKGROUND

In May 2022, B.D. sexually assaulted E.M. twice at school during their eighth-grade year at Mason Middle School in the District. (Am. Compl. ¶¶ 13–18, ECF No. 9, at PageID.65–66). E.M. reported the sexual assaults to school officials, and the District promptly initiated an investigation. (*Id.* ¶¶ 22–24 at PageID.67). In July 2022, the District completed its investigation

---

[2] At the parties' first scheduling hearing, the Court dismissed E.M.'s State law claims for gender discrimination (Count 2) and intentional infliction of emotional distress (Counts 4 and 5). Despite being labeled as "State law civil conspiracy as to all Defendants," Count 3 alleged that Defendants engaged in "collective collusion . . . [resulting in a] violation of [E.M.'s] civil rights under Title IX." (Am. Compl. ¶ 77, ECF No. 9, at PageID.78). To ensure that it did not accidentally improperly dismiss a Federal § 1983 conspiracy claim, the Court only dismissed "the portion of Count 3 that alleges a conspiracy to violate State law." (ECF No. 15 at PageID.168). But in her briefing, E.M. affirmatively disclaims that she is pursuing a § 1983 conspiracy claim and repeatedly reiterates that she is only bringing a conspiracy claim under § 1985(3). (*See, e.g.*, ECF No. 16 at PageID.182–83). Accordingly, the Court now dismisses Count 3 in its entirety.

[3] The Court's dismissal of the State law claims makes the District Defendants' recent filing of a Notice of Non-Party Fault somewhat puzzling. (ECF No. 23). The filing would be mandatory under State law statutory and constitutional provisions for State law tort claims. It may be that the District Defendants believed the potential § 1983 conspiracy claim in Count 3 would ultimately incorporate enough State law principles and procedures to cover such a notice under 42 U.S.C. § 1988(a). This Court has not previously resolved the issue, and Defendants may have thought it was better to preserve the issue than potentially forfeit or waive it, given that recent Circuit cases have readily found forfeiture or other waiver in other contexts. With only the Title IX claim against the District remaining, however, the Court is hard-pressed to see any potential application of the notice of non-party fault provisions, so the Court is not likely to consider whether and how § 1988(a) might apply in this case, either.

and expelled B.D. for violating Title IX and other District policies. (*Id.* ¶¶ 24–27 at PageID.67–68).

Using the process articulated in Michigan State law, B.D.'s parents petitioned one year later to have B.D. reinstated in the District for tenth grade at Mason High School—the same school E.M. attended. *See* MICH. COMP. LAWS § 380.1311(6). (Am. Compl. ¶¶ 28–31, ECF No. 9, at PageID.68). Even though the District is not B.D.'s "home" District and he only attended school there as a "Schools of Choice" participant, the District granted B.D.'s application and voluntarily reenrolled him as a "choice" student. E.M. alleges the District only did so because B.D.'s parents Barb Byrum (the Ingham County Clerk) and Brad Delaney (a sergeant for the Ingham County Sheriff's Department) improperly leveraged their local political power and influence to protect their son and their own reputations. (*Id.* ¶¶ 28–33 at PageID.68–69).

When B.D. reenrolled at Mason High School in the fall of 2023, the District—through Mason High School Principal Lance Delbridge and Assistant Principle Nicholas Toodzio—put in place a no-contact order between B.D. and E.M. (Am. Compl. ¶ 33, ECF No. 9, at PageID.69). The order instructed B.D. and E.M. to avoid face-to-face contact and prohibited both B.D. and E.M. from traversing certain areas of the school at certain times. (*Id.* ¶ 34 at PageID.69). Despite the District's order and a companion State court Personal Protection Order barring B.D. from contacting E.M., E.M. contends that she still sees B.D. nearly every day in school hallways, the lunchroom, and at extracurricular activities—constantly reminding her of the sexual assaults.[4] (*Id.* ¶¶ 34–36 at PageID.69).

---

[4] In their brief, B.D.'s parents assert that B.D. began "to attend school remotely beginning in mid-January 2024 . . . and he has not been at Mason High School during the day since." (ECF No. 11 at PageID.92). As a threshold matter, the Court is unsure how to interpret the cryptic phrase "during the day." Regardless, this is a new factual allegation outside the scope of the pleadings, so the Court does not consider it here. But even if the Court accepted it as true, the Court would

E.M. contends that the District's[5] reinstatement of B.D. and its "hollow" no-contact order violate Title IX's prohibition against sex discrimination (Count 1). *See* 20 U.S.C. § 1681(a). (Am. Compl. ¶¶ 40–60, ECF No. 9, at PageID.70–74). She also alleges that all the Defendants conspired to deprive E.M. of equal protection under the law (Count 6). *See* 42 U.S.C. § 1985(3). (*Id.* ¶¶ 96–103 at PageID.85–87). Defendants now move to dismiss.

## ANALYSIS

### A.  Legal Standards.

Both the District Defendants (the District, Delbridge, and Toodzio) and the Parent Defendants (Byrum and Delaney) move under FED. R. CIV. P. 12(b)(6) to dismiss E.M.'s claims against them. To survive a motion to dismiss, E.M. must allege facts that—taken as true by the Court—are sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility requirement is satisfied if E.M.'s well-pleaded factual allegations "allow[] the court to draw the reasonable inference that [Defendants are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B.  Title IX Claim Against the District.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Student-on-student sexual harassment at school violates Title IX "in certain limited circumstances." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 638 (1999). To succeed on

---

reach the same result because this new allegation does not affect E.M.'s core claim that the District failed to enforce the non-contact order in fall 2023 and that B.D. frequently violated it.

[5] Delbridge and Toodzio are not named Defendants in the Title IX gender discrimination claim. They are only named Defendants in the § 1985(3) conspiracy claim.

her Title IX student-on-student sexual harassment claim, E.M. must show that (1) she endured sexual harassment from B.D. that was so severe, pervasive, and objectively offensive that it deprived her of access to the educational opportunities or benefits provided by the District; (2) the District had actual knowledge of the sexual harassment; and (3) the District was deliberately indifferent to that harassment. *See, e.g.*, *Stiles v. Grainger Cnty.*, 819 F.3d 834, 848 (6th Cir. 2016). The District does not dispute that E.M. plausibly pleaded the first two elements. Consequently, the dispositive issue is whether E.M. plausibly pleaded that the District acted with deliberate indifference.

The "deliberate indifference" element requires E.M. to establish that the District responded to B.D.'s sexual harassment of E.M. in a way that is "clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. Importantly, "[c]ontext, as in most things, tends to illuminate [the deliberate indifference inquiry]." *See Foster v. Bd. of Regents of Univ. of Mich.*, 982 F.3d 960, 970 (6th Cir. 2020) (en banc). This means that in evaluating E.M.'s deliberate-indifference claim, the Court must consider the special "custodial and tutelary" responsibilities the District owes to its minor students. *See Davis*, 526 U.S. at 646 (quotation omitted); *Foster*, 982 F.3d at 970 ("[T]he deliberate-indifference inquiry [for college students] operates differently than it does for elementary-age 'schoolchildren.'"). Viewing E.M.'s allegations this way, the Court concludes that the Amended Complaint clears the "high [pleading] bar" for deliberate indifference claims, *see Stiles*, 819 F.3d at 848, and plausibly alleges that the District acted in a "clearly unreasonable" manner.

In the main, the Court agrees with the District that reenrolling a previously-expelled student is not necessarily "clearly unreasonable." *See* MICH. COMP. LAWS § 380.1311(6). The District's argument that its conduct is an ordinary application of this principle, however, completely ignores

E.M.'s critical allegation that the District voluntarily readmitted B.D. *as a "school-of-choice" student.* (*See, e.g.*, Am. Compl. ¶ 85, ECF No. 9, at PageID.80). Because B.D. does not reside within the District's boundaries, his reinstatement petition did not present the District with the impossible task many school districts face of balancing the victim and assailant's competing constitutional and statutory rights. *See, e.g.*, *Foster*, 982 F.3d at 969. The District could have easily vindicated both students' rights by denying B.D.'s petition for reinstatement and advising him to seek re-enrollment in his "home" school district. But it did not do so. Instead—and despite a state court order barring B.D. from contacting E.M. because he "poses a credible threat" to E.M.'s safety and "interferes" with her education—the District allegedly bowed to pressure exerted by B.D.'s well-connected parents and prioritized B.D.'s social preferences at E.M.'s psychological and educational expense. (Am. Compl. ¶¶ 26, 32, 37–38 at PageID.67–68, 70).

E.M.'s allegation that the District failed to enforce the no-contact order between B.D. and E.M strengthens the case for a plausible inference of deliberate indifference. She alleges that she is forced to see B.D. "nearly every day" during school hours and at extracurricular activities. (Am. Compl. ¶¶ 35, 39, 58, ECF No. 9, at PageID.70, 73). E.M. also contends that the District "fail[ed] to discipline B.D." for violating the no-contact order—indicating that B.D. flagrantly disregarded the order and that E.M.'s Title IX claim is premised on much more sinister post-notice interactions between E.M. and B.D. than occasional hallway or lunchroom sightings. *Cf. M.D. v. Bowling Green Indep. Sch. Dist.*, 709 F. App'x 775, 777 (6th Cir. 2017) (no deliberate indifference when no-contact order "worked as intended" and sexual assault victim "did not have a single [meaningful] on-campus interaction" with assailant). (*Id.* ¶ 57 at PageID.73). If E.M. is able to prove these allegations, a reasonable fact-finder could conclude that the District's conduct was "clearly unreasonable" and amounted to deliberate indifference under Title IX.

The District contends that even if it acted in a "clearly unreasonable" manner, E.M.'s deliberate indifference claim fails because she did not plausibly allege that the District's conduct caused "further harassment" of E.M. by B.D.  (*See* ECF No. 12-1 at PageID.115–16; ECF No. 19 at PageID.232–37).  This argument relies on *Kollaritsch v. Michigan State University Board of Trustees*—specifically, its exposition that deliberate-indifference Title IX claims require proof that the school's conduct was both "clearly unreasonable *and* le[d] to further harassment."  944 F.3d 613, 622 (6th Cir. 2019) (emphasis in original).  But the District's argument overlooks that the Sixth Circuit has "applied the [*Kollaritsch*] decision only to universities."  *See Doe v. Metro. Gov't of Nashville*, 35 F.4th 459, 467 (6th Cir. 2022).

Moreover, following *Kollaritsch*, the *en banc* Sixth Circuit reminded us in *Foster* that context is still critical to "illuminate" the deliberate indifference inquiry.  *See* 982 F.3d at 970.  As *Foster* itself acknowledged, a large college campus with students who are almost all at least 18 years old is fundamentally different than a small, single-building high school campus with students who are almost all under 18 years old.  *See id.*  In light of this, how the *Kollaritsch* "further harassment" requirement applies outside the college context is an open question and not—in the Court's view—a basis for a Rule 12(b)(6) dismissal in a high-school case like this one.  At a minimum, the parties and the Court should have the benefit of plenary discovery and a complete Civil Rule 56 record to apply the standard in context.

But here, even applying *Kollaritsch* literally would still not trigger dismissal because E.M. has plausibly pleaded "further harassment."  Again, context matters, and what constitutes actionable "severe, pervasive, and objectively offensive" harassment "depends on a constellation of circumstances, expectations, and relationships"—including the ages of the harasser and victim and the institutional setting in which the alleged misconduct arose.  *See Davis*, 526 U.S. at 651

(quotation omitted).  Especially considering E.M's young age and her particularly traumatic sexual assaults, her allegations that the District failed to enforce the no-contact order and failed to discipline B.D. for violating it plausibly permit an inference she was subjected to post-notice harassment.  (*See, e.g.*, Am. Comp. ¶¶ 35, 39, 58, ECF No. 9, at PageID.70, 73).  While this fresh harassment is not at the same level she experienced before with direct sexual assault, it is still enough to interfere with her educational experience based on her sex.  Whether E.M. will ultimately be able to prove her Title IX claim remains to be seen, but at the very least, her allegations warrant discovery and fact development.  The Court therefore denies the District's motion to dismiss E.M.'s Title IX gender discrimination claim against it.

### C. § 1985(3) Conspiracy Claim Against All Defendants (Count 6).

1. Merits.  E.M. also brings a conspiracy claim against all five Defendants under § 1985(3), which prohibits conspiracies—including conspiracies between private actors—to deprive persons of their equal protection rights.  *See, e.g.*, *Fox v. Mich. St. Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006) (describing the types of conspiracies covered under § 1985).  To prove a § 1985(3) conspiracy claim, E.M. must show that Defendants "(1) conspired together, (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws, (3) and committed an act in furtherance of the conspiracy, (4) which caused injury to person or property, or a deprivation of any right or privilege of a citizen of the United States, and (5) that the conspiracy was motivated by racial, or other class-based, invidiously discriminatory animus." *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971)).  Stated differently, E.M. must prove all of the already-demanding elements of a conspiracy plus an additional element of class-based discriminatory animus—here, gender discrimination.  *Dunn v. Tennessee*, 697 F.2d 121, 124 (6th Cir. 1982); *Volunteer Med. Clinic, Inc.*

*v. Operation Rescue*, 948 F.2d 218, 224 (6th Cir. 1991) ("[W]omen constitute a cognizable class under § 1985(3).").

E.M.'s § 1985(3) claim misses the mark in several respects. Most fundamentally, E.M.'s Complaint is devoid of any assertions indicating that Defendants' alleged conspiracy was motivated by gender-based animus. E.M.'s claim is that B.D.'s parents improperly wielded their local political clout and conspired with the District Defendants to have B.D. reinstated at Mason High School for his tenth-grade year. But even if Defendants acted improperly and the *impact* of their conduct denied E.M. equal protection under the law, it does not automatically follow that Defendants acted with gender-based discriminatory *intent*. *See, e.g.*, *Majeske v. Fraternal Ord. of Police, Loc. Lodge No. 7*, 94 F.3d 307, 311 (7th Cir. 1996) ("Disparate impact alone does not satisfy the pleading requirements for either § 1983 or § 1985(3))."). To the contrary, according to the factual allegations in E.M.'s Complaint, B.D.'s parents—and by extension, the three District Defendants—acted *only* to protect themselves and their son, and allow B.D. to return to the school district he has attended since early childhood. The only reasonable reading of E.M.'s allegations is that the purported conspiracy had *everything* to do with protecting B.D. and his parents' reputations and *nothing* to do with a desire to discriminate against E.M. because she is a woman. Because E.M. has failed to plausibly allege gender-based discriminatory animus, the Court dismisses E.M.'s § 1985(3) conspiracy against the District, Delbridge, Toodzio, Byrum, and Delaney.

2. Attorney's Fees. In their brief, Byrum and Delaney request attorney's fees under 42 U.S.C. § 1988(b), which permits the Court, in its discretion, to award reasonable attorney's fees to a prevailing party in a § 1985 case. B.D.'s parents—along with the District Defendants—are undoubtedly the "prevailing part[ies]" on E.M.'s § 1985(3) conspiracy claim, but "[a]n award of

attorney fees against a losing plaintiff in a civil rights action is an extreme sanction and must be limited to truly egregious cases of misconduct." *Riddle v. Egensperger*, 266 F.3d 542, 547 (6th Cir. 2001) (quotation omitted).  E.M. "should not be assessed [her] opponent's attorney's fees unless a court finds that [her] claim was frivolous, unreasonable, or groundless, or that [she] continued to litigate after it clearly became so." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978).

That is not the situation here.  Even though E.M.'s legal arguments did not persuade the Court of Defendants' liability under § 1985(3), the Court must "resist the understandable temptation to engage in *post hoc* reasoning by concluding that because [E.M.] did not ultimately prevail, [her] action must have been unreasonable or without foundation." *See Christiansburg Garment Co.*, 434 U.S. at 421–22.  Such "hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success." *Id.* at 422.  E.M. supported her arguments with reasonable—if ultimately unpersuasive—interpretations of legal precedent, and her claim is not frivolous or groundless.  At bottom, there is nothing that even remotely resembles the type of "egregious misconduct" that would support an award of attorney's fees under § 1988.  The Court therefore denies Byrum and Delaney's motion for attorney's fees.

**ACCORDINGLY, IT IS ORDERED**:

1. Defendants Mason Public School District, Lance Delbridge, and Nicholas Toodzio's Motion to Dismiss, (ECF No. 12), is **GRANTED IN PART and DENIED IN PART**.

2. Defendants Barb Byrum and Brad Delaney's Motion to Dismiss, (ECF No. 10), is **GRANTED**.

3. Defendants Byrum and Delaney's Motion for Attorney's Fees, (ECF No. 10), is **DENIED**.

4. Defendants Delbridge, Toodzio, Byrum, and Delaney are **DISMISSED** as party Defendants from this case.

5. This case shall move forward only on Plaintiff E.M.'s Title IX gender discrimination claim (Count 1) against Defendant Mason Public School District.

**IT IS SO ORDERED.**


Dated: May 9, 2024

/s/ Robert J. Jonker
ROBERT J. JONKER
UNITED STATES DISTRICT JUDGE